THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY, Plaintiff-Appellee v.
ROBERT M. TALFORD, Defendant-Appellant

No. COA10-897

(Filed 2 August 2011)

**1. Quantum Meruit—hospital charges—damages—material issue of fact—summary judgment improper**

The trial court erred in an action to recover hospital fees in *quantum meruit* by granting summary judgment in favor of plaintiff hospital on the issue of damages. There was a material issue of fact concerning whether the charges plaintiff billed defendant were reasonable for the goods and services rendered.

**2. Quantum Meruit—hospital charges—guaranty claim—summary judgment improper**

The trial court erred in an action to recover hospital fees in *quantum meruit* by granting summary judgment in favor of plaintiff hospital on the issue of damages. Even if summary judgment in favor of plaintiff was improper on its implied contract claim, summary judgment was not proper based on plaintiff's guaranty claim.

Appeal by Defendant from order entered 1 April 2010 by Judge Timothy L. Patti in Superior Court, Mecklenburg County. Heard in the Court of Appeals 13 December 2010.

*The McIntosh Law Firm, P.C., by Robert G. McIntosh, Regina Wheeler Swinea, and James C. Fuller, for Plaintiff-Appellee.*

*Robert M. Talford, Defendant-Appellant, pro se.*

McGEE, Judge.

Robert M. Talford (Defendant) was admitted to a medical facility of The Charlotte Mecklenburg Hospital Authority (Plaintiff) on 5 November 2007 and was discharged on 8 November 2007. Plaintiff does business as Carolina HealthCare System. Plaintiff provided medical care to Defendant and subsequently billed Defendant $14,419.57 for services rendered. Defendant did not pay the $14,419.57 charged by Plaintiff. Plaintiff filed a complaint against Defendant and his wife, Miriam Talford (together, Defendants), on 15 October 2009. Plaintiff's complaint included claims for "implied contract and quantum meruit" and "guaranty of payment," and requested compensatory damages in

the amount of $14,419.57. Plaintiff also requested attorney's fees and asked that costs be taxed against Defendants. Defendants answered on 28 December 2009. Plaintiff voluntarily dismissed Miriam Talford from the action on 2 February 2010 and moved for summary judgment against Defendant on that same date. In an order entered 1 April 2010, the trial court granted Plaintiff's motion for summary judgment. Defendant appeals.

I.

[1] In Defendant's sole argument, he contends the trial court erred in granting summary judgment in favor of Plaintiff on the issue of damages. We agree.

> The North Carolina Rules of Civil Procedure provide that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The party moving for summary judgment has the burden of establishing the lack of any triable issue. The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim. By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial. All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion.

*Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citations omitted). "On appeal, an order allowing summary judgment is reviewed *de novo*." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004) (citation omitted).

In the present case, Defendant argues that summary judgment was improper because there was a material issue of fact concerning whether the charges Plaintiff billed Defendant were reasonable for the goods and services rendered. Therefore, the trial court's grant of summary judgment on the issue of Defendant's liability stands and we consider only whether there was any genuine issue of material fact concerning the measure of damages awarded to Plaintiff. *See Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 555 (1988). Although the

dissenting opinion concludes that the trial court granted summary judgment based upon a theory of direct breach of contract, the dissent agrees that, ultimately, the dispositive issue is whether the trial court properly granted summary judgment with respect to damages based upon *quantum meruit*, which is the only issue for analysis currently before us.

"Our cases hold that the measure of damages for unjust enrichment [implied contract or *quantum meruit*] is the reasonable value of the goods and services to the defendant." *Booe*, 322 N.C. at 570, 369 S.E.2d at 555 (citations omitted).

> [W]hen a physician renders professional services, the law implies a promise on the part of the patient who received the benefit of the services to pay what the services are reasonably worth, absent an agreement that the services were rendered gratuitously. Failure to agree on the amount of compensation entitles the physician to the reasonable value of his services, even where he ministers treatment to a person incapable of mutuality of assent.

*Forsyth Co. Hospital Authority, Inc. v. Sales*, 82 N.C. App. 265, 266, 346 S.E.2d 212, 214 (1986) (citations omitted). This implied promise by a patient to pay a *reasonable* charge for medical services "applies equally to hospitals [and] health care providers." *Id.* at 268, 346 S.E.2d at 215.

Plaintiff alleges in its complaint that: "The fair and reasonable value of the goods and services [provided by Plaintiff to Defendant during Defendant's hospital stay] . . . is not less than Fourteen Thousand Four Hundred Nineteen Dollars and 57/100 ($14,419.57)." Attached to Plaintiff's complaint as "Exhibit A" was a "Legal Account Balance Summary Sheet" indicating Plaintiff charged Defendant $14,419.57 for services rendered. This account balance sheet does not itemize the charges or state what services Plaintiff rendered to Defendant. Plaintiff filed affidavits stating that the unpaid charges it had billed Defendant amounted to $14,419.57, and that this amount was reasonable. "[A] bill for services rendered, standing alone, is insufficient to support an award of damages[;] [however,] it is some evidence of the value of one's services." *Environmental Landscape Design v. Shields*, 75 N.C. App. 304, 307, 330 S.E.2d 627, 629 (1985) (citations omitted).

In *Harrell v. Construction Co.*, 41 N.C. App. 593, 255 S.E.2d 280 (1979), our Court held that ledger sheets showing an account of work the plaintiff contended it had performed for the defendant was insuf-

ficient to prove the reasonable value of the services the plaintiff had performed for the defendant in a claim for *quantum meruit.* Our Court held that the defendant's motion for involuntary dismissal should have been granted and the case was remanded for a new trial because the ledger sheets alone were held insufficient to support the damages award granted to the plaintiff. *Id.* Our Court in *Harrell* stated:

> The measure of damages under an implied contract is the reasonable value of the services accepted and appropriated by the defendant. "The general rule is that when there is no agreement as to the amount of compensation to be paid for services, the person performing them is entitled to recover what they are reasonably worth, based on the time and labor expended, skill, knowledge and experience involved, and other attendant circumstances, rather than on the use to be made of the result or the benefit to the person for whom the services are rendered." "Damages are never presumed. The burden is always upon the complaining party to establish by evidence such facts as will furnish a basis for their assessment, according to some definite and legal rule." "The amount to be paid is not the value of the services to the recipient, nor should his financial condition be taken into consideration in determining the value of the services performed. Many factors serve to fix the market value of an article offered for sale. Supply, demand, and quality (which is synonymous with skill when the thing sold is personal services) are prime factors. The jury [here the trial judge], when called upon to fix the value, must base its decision on evidence relating to the value of the thing sold. Without some evidence to establish that fact, it cannot answer. To do so would be to speculate." Plaintiff did not offer evidence as to the reasonable value or market value of its services, but merely stated what it was charging for these services as shown on [the ledger sheets].

*Id.* at 595-96, 255 S.E.2d at 282 (citations omitted), *but see Booe,* 322 N.C. at 571, 369 S.E.2d at 556 ("The Court of Appeals has held that an invoice or bill alone is not sufficient evidence to support a jury award as to the reasonable value of services. *Harrell v. Construction Co.,* 41 N.C. App. 593, 255 S.E.2d 280. We expressly declined to rule on that question in *Harrell v. Construction [Co.],* 300 N.C. 353, 266 S.E.2d 626. It is not necessary for us to decide this question in this case because there is more evidence than the amount billed to the defendants."). Therefore, our Supreme Court has not decided whether a bill for services rendered, standing alone, can be sufficient to support an

award of damages for a claim of *quantum meruit*. We are bound by the decisions from our Court that have addressed this issue. Further, most of the cases relied upon by Plaintiff, Defendant, our majority opinion, and the dissent, involve determinations of whether *the grant or denial of motions for directed verdict* were proper, not whether *the grant or denial of motions for summary judgment were proper.* As we will discuss in detail below, this is a critical distinction.

## II.

Plaintiff states in its complaint that the services it rendered to Defendant were "reasonable given that they are standard charges rendered to all patients receiving similar types of services, they are within industry norms for similar facilities providing similar services at similar levels of care, and they are compliant with various published billing and charging regulations and guidelines[.]" Plaintiff's Director of Revenue Management, Sunny Sain, and Plaintiff's Manager of Patient Financial Services, James D. Robinson, filed affidavits to this effect. Defendant filed an affidavit on 24 March 2010, stating in relevant part the following: (1) Plaintiff charged Defendant $18.40 for one tablet of Diltiazem, but Defendant obtained thirty tablets of Diltiazem from his pharmacy for $23.00; (2) Plaintiff charged Defendant $406.50 for one unit of Enoxaparin sodium, whereas the "cost for this item is $278.00 for ten units;" (3) Plaintiff charged Defendant $1.45 for one 1.0 mg folic acid tablet, but Defendant could obtain thirty 1.0 mg folic acid tablets from a pharmacy for $4.00; and (5) Plaintiff's charges to Defendant "exceed[ed] the charges made and paid by other patients in . . . [D]efendant's medical condition."

In *Forsyth Co.*, our Court affirmed the grant of summary judgment in favor of a hospital for costs billed to a patient for medical services rendered. In explaining its decision, our Court stated:

> [The patient] did not challenge the amount of the hospital bill as not indicative of the reasonable value of the medical services rendered; therefore, summary judgment in favor of [the plaintiff hospital] for the amount of the bill is
>
> Affirmed.

*Forsyth Co.*, 82 N.C. App. at 269, 346 S.E.2d at 215. In the case before us, Defendant expressly challenged the hospital bill relied upon by Plaintiff. We hold that the trial court erred in granting summary judgment in favor of Plaintiff on the issue of damages because Plaintiff's evidence concerning damages consisted entirely of a "bill" stating

that Plaintiff was owed $14,419.57, along with affidavits from its own employees stating that that amount was reasonable. Defendant challenged the reasonableness of that amount and, in his affidavit, provided specific challenges to amounts Defendant claims he was charged by Plaintiff for services. Based on the standards of review, and prior opinions of this Court and our Supreme Court, we hold that there existed a material issue of fact concerning the reasonableness of the $14,419.57 Plaintiff claims it is owed. This issue should have been submitted to the trier of fact. *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 352-53, 595 S.E.2d 778, 781 (2004) (citations omitted). In our holding, however, we are *not* suggesting that the testimony of Plaintiff's employees, as forecast in Plaintiff's affidavits, would be incompetent evidence to present at trial, since that issue is not before us. *See Hospital v. Brown*, 50 N.C. App. 526, 530, 274 S.E.2d 277, 280 (1981). We reverse that portion of the trial court's order granting summary judgment in favor of Plaintiff on the issue of the value of the services rendered and remand for further proceedings.

### III.

The dissent cites to *Environmental Landscape* and *Booe* in support of its determination that summary judgment in favor of Plaintiff was proper. The critical distinction between the present case and *Environmental Landscape* and *Booe* is that the present case *was decided on summary judgment.* The dissent contends that *Environmental Landscape* and *Booe* are directly applicable to its analysis because "this Court has clearly stated that" the standard of review for summary judgment and directed verdict are "essentially the same." The dissent relies on *Nelson v. Novant Health Triad Region*, 159 N.C. App. 440, 583 S.E.2d 415 (2003), for this proposition. Our Court in *Nelson* stated:

> The standard of review for a directed verdict is essentially the same as that for summary judgment. When considering a directed verdict on review, this Court must establish "whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor, or to present a question for the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 323, 411 S.E.2d 133, 138 (1991) (citations omitted).

*Id.* at 442, 583 S.E.2d 415, 417 (2003). Our Court in *Nelson* cites no authority for its statement that these standards of review are "essentially the same." Our Supreme Court in *Davis* did not state this principle.

Rather the *Davis* Court simply stated: "The rules governing motions for summary judgment are now familiar learning, and it would serve no useful purpose to repeat them here. A concise statement of the rules appears in *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 376 S.E.2d 425 (1989)." *Davis*, 330 N.C. at 319, 411 S.E.2d at 135 (citation omitted). The standard of review as stated in *Collingwood* is the standard we cite above at the beginning of our analysis. *Davis* then cites the standard of review for directed verdict:

> The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury. When determining the correctness of the denial for directed verdict or judgment notwithstanding the verdict [JNOV], the question is whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor . . . or to present a question for the jury. Where the motion for judgment notwithstanding the verdict is a motion that judgment be entered in accordance with the movant's earlier motion for directed verdict, this Court has required the use of the same standard of sufficiency of evidence in reviewing both motions.

*Id.* at 322-23, 411 S.E.2d at 138 (citations omitted). The standards of review for summary judgment and directed verdict are the same in the following respects: (1) they both involve a determination of whether, as a matter of law, the non-moving party has the right to proceed; and (2) they both require the trial court to make this determination considering the relevant documents for summary judgment— or evidence for directed verdict—*in the light most favorable to the non-moving party*. Perhaps most relevant to our analysis, in the present case, the trial court was required to consider the relevant documents in the light most favorable to *Defendant*. Conversely, in *Environmental Landscape* and *Booe* the trial courts were required to consider the evidence presented at trial in the light most favorable to *the plaintiffs* in those cases.

We do not believe trial courts make the same determination on summary judgment as they make on motions for directed verdicts. On summary judgment, the trial court must consider "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Collingwood*, 324 N.C. at 66, 376 S.E.2d at 427. At the summary judgment stage, neither party has had the opportunity to

present evidence, or cross-examine. The parties have merely provided a forecast of evidence which may or may not accurately reflect the evidence ultimately presented at trial. However, on a motion for directed verdict, the trial court has had the opportunity to hear testimony and consider evidence presented. The parties have had the opportunity to cross-examine witnesses. Therefore: "The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis*, 330 N.C. at 322, 411 S.E.2d at 138; *see also Goodwin v. Investors Life Ins. Co.*, 332 N.C. 326, 329, 419 S.E.2d 766, 767 (1992) ("It is fundamental law that a motion by a defendant for a directed verdict under N.C.G.S. § 1A-1, Rule 50(a) of the Rules of Civil Procedure tests the legal sufficiency of the *evidence* to take the case to the jury and support a verdict for the plaintiff.") (emphasis added).

We do not believe the language in *Nelson*, that these standards of review are "essentially" the same, stands for the proposition that a trial court treats a review of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, at the summary judgment stage in exactly the same manner that it treats the review of actual evidence presented at trial for the purposes of a directed verdict or JNOV. Nor do we believe this statement in *Nelson* constitutes a holding. Our Court in *Nelson* cited the standards of review for *both* summary judgment and directed verdict, *Nelson*, 159 N.C. App. at 442, 583 S.E.2d at 417, and we do not find that the statement cited by the dissent was necessary to the outcome in *Nelson. Easton v. J.D. Denson Mowing*, 173 N.C. App. 439, 442, 620 S.E.2d 201, 202-03 (2005) (citation omitted).

Following the dissent's reasoning, in *every* instance that a trial court grants a directed verdict after hearing the evidence, the trial court could have (and perhaps should have) granted summary judgment, even though it only considered the documents provided for in N.C. Gen. Stat. § 1A-1, Rule 56. Further, following the reasoning of the dissent, the *denial* of a directed verdict for one party would mean that summary judgment could (or should) have been granted for the *other* party.

Plaintiff moved for summary judgment, requiring the trial court to consider the materials presented in the light most favorable to the non-moving party—Defendant. The trial court granted summary judgment in favor of Plaintiff. The holdings in *Environmental Landscape* and *Booe*, the cases upon which the dissent relies, were that the *evi-*

*dence* presented at trial, when considered in the light most favorable to the *non-moving* parties, was sufficient for the denial of the defendants' motions for directed verdicts. According to the dissent, because our Courts in *Environmental Landscape* and *Booe* held that the evidence was sufficient to go to the jury when considered in the light most favorable to *the plaintiffs*, the trial court in the present case properly granted summary judgment to Plaintiff even though it was required to consider the relevant documents in the light most favorable to *Defendant*.

We cannot agree that the "in the light most favorable to the non-moving party" requirement is insignificant to our review of this case as related to *Environmental Landscape* and *Booe*. Neither *Environmental Landscape* nor *Booe* suggests that, had the *plaintiffs* in those cases moved for directed verdicts on the issue of damages, the trial court would have been compelled to grant those motions. The holdings in those cases only stand for the proposition that the evidence presented at trial was sufficient to support the juries' determinations of damages, not that the proper amounts of damages had been established as a matter of law. Our holding in the case before us, consistent with *Environmental Landscape* and *Booe*, is that the issue of damages needed to be decided by a trier of fact. *See Feibus & Co. v. Construction Co.*, 301 N.C. 294, 304-05, 271 S.E.2d 385, 392 (1980) (discussing the difference between evidence sufficient to create a jury question and evidence requiring judgment as a matter of law); *Bird v. Bird*, 193 N.C. App. 123, 130-31, 668 S.E.2d 39, 44 (2008), *aff'd* 363 N.C. 774, 688 S.E.2d 420 (2010) ("[I]t is not the function of this Court, or the trial court for that matter, to weigh conflicting evidence of record. Rather, in cases such as this, when there are genuine issues of material fact that are legitimately called into question, summary judgment should be denied and the issue preserved for the [fact finder].") (citation omitted); *Environmental Landscape*, 75 N.C. App. at 306, 330 S.E.2d at 628 ("In short, if plaintiff alleged and proved acceptance of services and the value of those services, it was entitled to go to the jury on *quantum meruit*.") (citation omitted).

IV.

Though we find the above distinction dispositive, we also note that the facts in *Environmental Landscape* and *Booe* are distinguishable from the facts in the present case. In *Environmental Landscape*, there was evidence that a different landscaper actually charged the same hourly rate for the same type of work as that charged by the plaintiff. This independent corroboration of the reasonableness of

the amount of damages is not present in the case before us. In the present case, we have only affidavits from Plaintiff's employees stating that the amounts charged to Defendant were reasonable as they were the same as would be charged by other hospitals. We do not find that Plaintiff's own statements concerning the reasonableness of the charges carries the same weight as specific evidence that an independent third party did, in fact, charge the same rates. The dissent contends that it is inappropriate for us to consider the source of the evidence presented by Plaintiff, as it amounts to a credibility judgment. Although we agree with the dissent that making a credibility determination at this stage of the process would be improper, we are not making any credibility determination; rather, we are observing that it was improper for *the trial court* to make a credibility determination *on summary judgment*. We hold *only* that it is the province of the trier of fact at trial, not the trial court on summary judgment, to weigh the evidence and assess the credibility of the witnesses. Our Court has addressed credibility in reversing a damages award based upon *quantum meruit* following trial, and considered the lack of independent or objective evidence to support a plaintiff's claim for a specific amount of damages:

> The only evidence supporting the awarded amount of $22,500 is plaintiff's own estimate, upon inquiry by the court, of the reasonable value of the services rendered and not paid for. As defendant points out, there was no effort by either plaintiff or the court to cast this figure in terms of the type of work done or the number of hours worked or to correlate it to any community or industry standard. Even though the $22,500 figure may be, in plaintiff's words, "extremely reasonable," especially in view of $32,150 prayed for in the Complaint, the evidence supporting that figure is clearly inadequate.

*Paxton v. O.P.F., Inc.*, 64 N.C. App. 130, 134, 306 S.E.2d 527, 530 (1983); *see also Hood v. Faulkner*, 47 N.C. App. 611, 617 (1980) (citation omitted) ("Nor is the plaintiff's opinion that the amount of his bill is reasonable sufficient to sustain an award for such sum."). In *Austin v. Enterprises, Inc.*, 45 N.C. App. 709, 264 S.E.2d 121 (1980), a case where liability was established under a theory of *quantum meruit*, our Court stated:

> The sole issue presented concerns the worth of the services, and the burden of proof on that issue rests on the plaintiff. The rule of law is settled in this State that the trial judge cannot direct a verdict for the party with the burden of proof when that party's

> "right to recover depends upon the credibility of his witnesses." This is true even though the evidence be uncontradicted.

*Id.* at 710, 264 S.E.2d at 121 (citations omitted).

> The only evidence of the value of plaintiff's services in this case was the testimony of one partner in the firm that he "felt" $16.00 an hour to be a "reasonable" fee. No *independent or objective evidence* of the reasonable value of such services was offered. Plaintiff's proof clearly depends completely upon the credibility of its witness. *Although the defendant offered no evidence respecting the reasonable value of the services rendered it, it did deny that their worth as determined by the plaintiff was reasonable. Such is sufficient to raise an issue of fact as to the reasonable value of the services, and that question is for the jury.*

> It follows that the court erred in directing a verdict for the plaintiff. Accordingly, the judgment appealed from is reversed, and the cause is remanded for a new trial.

*Id.* at 710-11, 264 S.E.2d at 122 (citations omitted) (emphasis added); *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 220, 513 S.E.2d 320, 325 (1999) ("[i]f there is any question as to the weight of evidence, summary judgment should be denied") (citation omitted). Defendant's affidavit included the following paragraphs:

> 5. That [P]laintiff's charges exceed the charges made and paid by other patients in . . . [D]efendant's medical condition;

> 6. That . . . [P]laintiff's charges are not reasonable for the medical care necessary to control . . . [D]efendant's medical condition.

Though the dissent correctly states that this portion of Defendant's affidavit was not supported by any evidence in the record that it was based upon Defendant's personal knowledge, pursuant to *Austin*, this portion of Defendant's affidavit was relevant as it expressly denied the reasonableness of the worth of the goods and services provided by Plaintiff. *Austin*, 45 N.C. App. at 710-11, 264 S.E.2d at 122 ("Plaintiff's proof clearly depends completely upon the credibility of its witness. *Although the defendant offered no evidence respecting the reasonable value of the services rendered it, it did deny that their worth as determined by the plaintiff was reasonable. Such is sufficient to raise an issue of fact as to the reasonable value of the services, and that question is for the jury."*) (emphasis added).

Our Supreme Court has carved out very narrow exceptions where credibility may be determined as a matter of law—none of which apply in the present case. *Bank v. Burnette*, 297 N.C. 524, 537-38, 256 S.E.2d 388, 396 (1979).

> [W]hile credibility is generally for the jury, courts set the outer limits of it by preliminarily determining whether the jury is at liberty to disbelieve the evidence presented by movant. Needless to say, the instances where credibility is manifest will be rare, and courts should exercise restraint in removing the issue of credibility from the jury.

*Id.* at 538, 256 S.E.2d at 396 (citations omitted); *see also Murdock v. Ratliff*, 310 N.C. 652, 659, 314 S.E.2d 518, 522 (1984) ("This Court has previously stated that a directed verdict may be granted in favor of the party with the burden of proof when the credibility of the movant's evidence is manifest as a matter of law. However, in order to justify granting a motion for a directed verdict in favor of the party with the burden of proof, the evidence must so clearly establish the fact in issue that no reasonable inferences to the contrary can be drawn.") (citations omitted); *Henry v. Knudsen*, ___ N.C. App. ___, ___, 692 S.E.2d 878, 882 (2010).

Plaintiff's affidavits averring that the amount it charged Defendant was consistent with what other hospitals charged and within the industry norms are not supported by any accompanying documentation in the record. The affidavits are simply statements made by Plaintiff's employees. Though these employees *may well be competent to testify at trial* concerning these matters, their credibility is an issue to be weighed and determined by the jury as finder of fact. *Population Planning Associates, Inc. v. Mews*, 65 N.C. App. 96, 99, 308 S.E.2d 739, 741 (1983) (citation omitted) ("the credibility of testimony is for the jury, not the trial judge"). Defendant contested the veracity of Plaintiff's complaint and affidavits concerning the reasonableness of the amount Plaintiff charged, and Defendant includes some specific examples of Plaintiff's alleged overcharging.

We do not believe the credibility of Plaintiff's employees, expressing their opinions that Plaintiff's charges were reasonable, is manifest as a matter of law. Therefore, granting summary judgment in favor of Plaintiff on the issue of damages was improper for this reason as well. *Ratliff*, 310 N.C. at 659, 314 S.E.2d at 522. The dissent, by contending that Plaintiff's allegations in its complaint and its affidavits suffice to establish the crucial element of reasonableness as a matter of law, is making a credibility determination.

The dissent, presented with no evidence beyond the affidavits of Plaintiff's employees, appears to state as fact that Plaintiff's charges are consistent with charges in other like facilities, and as fact that these charges are consistent with various regulations and guidelines. Our Court is *not* a fact-finding body, nor is it permitted to make determinations of credibility. The dissent further attempts to discard the credibility issue by stating: "Defendant never made any such credibility-related argument in his brief" and, therefore, "a decision to grant relief on this basis would be tantamount to 'creat[ing] an appeal for an appellant.' " We are to conduct a *de novo* review of the trial court's grant of summary judgment, and we make no credibility determination. The dissent cites *Kidd v. Early*, 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976), in support of its conclusion that Plaintiff's affidavits were sufficient to support the grant of summary judgment in Plaintiff's, the moving party's, favor. We believe the language from *Kidd* immediately following that cited by the dissent is helpful:

> This is not a holding that the trial court is required to assign credibility to a party's affidavits merely because they are uncontradicted. To be entitled to summary judgment the movant must still succeed on the basis of his own materials. He must show that there are no genuine issues of fact; that there are no gaps in his proof; that no inferences inconsistent with his recovery arise from his evidence; and that there is no standard that must be applied to the facts by the jury. Further, if the affidavits seem inherently incredible; if the circumstances themselves are suspect; or if the need for cross-examination appears, the court is free to deny the summary judgment motion. Needless to say, the party with the burden of proof, who moves for summary judgment supported only by his own affidavits, will ordinarily not be able to meet these requirements and thus *will not be entitled to* summary judgment.

*Id.* at 370-71, 222 S.E.2d at 410 (emphasis added).

We also find *Booe* distinguishable. In *Booe*, our Supreme Court stated:

> The plaintiff's bookkeeper testified to the total billing to the defendants and to the amount paid and unpaid by the defendants. We hold that her testimony as to what was billed for the materials and labor and the evidence of a payment for a part of it at the billed rate is evidence *sufficient for the jury to find* the reasonable value to the defendants of the remaining goods and services for which bills were submitted and no payment was made.

*Booe*, 322 N.C. at 571, 369 S.E.2d at 556 (emphasis added). Unlike the present case, the evidence presented *to the jury* in *Booe* included past bills that had been accepted and paid by the defendant. Because the defendant had accepted the reasonableness of the prior charges, by paying them without objection, our Supreme Court held that the evidence was sufficient for the *jury* to determine that similar unpaid charges were also reasonable.

The dissent seems to suggest that it is inappropriate for us to consider goods provided by Plaintiff to Defendant in determining whether the trial court properly granted Plaintiff's motion for summary judgment on the issue of the reasonableness of Plaintiff's claimed damages. The dissent suggests that because Plaintiff provides a service, it is inappropriate to consider the reasonableness of individual goods provided by Plaintiff. The dissent relies on a number of out-of-state opinions in support of this proposition. Our Supreme Court in *Booe* reasoned:

> [The] plaintiff furnished *material* and labor to the defendants for a substantial period without a contract and the defendants paid for it. This is some evidence of the value of the *goods* and labor furnished before the defendants stopped paying. The evidence was undisputed that the plaintiff furnished a substantial quantity of *materials* and labor after the last payment by the defendants. This was obviously of value. The plaintiff's bookkeeper testified to the total billing to the defendants and to the amount paid and unpaid by the defendants. We hold that her testimony as to what was billed for the *materials* and labor and the evidence of a payment for a part of it at the billed rate is evidence sufficient for the jury to find the reasonable value to the defendants of the remaining *goods* and services for which bills were submitted and no payment was made.

*Id.* at 571, 369 S.E.2d at 556 (emphasis added). The plaintiff in *Booe* was providing a service which also necessitated the provision of goods. We do not believe the reasonableness requirement is inapplicable to goods or materials just because they are provided in conjunction with a service. We disagree with the reasoning of the dissent, whereby a hospital could charge any amount for goods or materials, perhaps well in excess of the actual value of those goods or materials, and avoid the creation of an issue of material fact so long as it provided affidavits stating that its charges for the services it provided were reasonable and in accord with those charged by other hospitals.

V.

**[2]** Plaintiff argues that even if summary judgment in favor of Plaintiff was improper on its implied contract claim, summary judgment was still proper based on Plaintiff's guaranty claim. We disagree.

Although we held above that for Plaintiff's *quantum meruit* claim, liability was established and only the issue of damages remained, we address this argument because it presents additional issues. First, as shown below, if the "Payment Guaranty" section at issue is enforced as requested by Plaintiff, Defendant will be obligated to pay attorney's fees and costs, in addition to *"all charges* for services rendered[.]" Second, if we were to hold that the "Payment Guaranty" was enforceable, we would be confronted with the issue of whether the language, *"all charges* for services rendered[,]" (emphasis added), required Defendant to pay the total amount of the charges billed regardless of whether the charges could be found to be unreasonable in a *quantum meruit* analysis.

When Defendant was admitted to Plaintiff's medical facility, Defendant signed a "Request for Treatment and Authorization Form" that included a "Payment Guaranty" section. Pursuant to the payment guaranty section, Defendant agreed "to pay all charges for services rendered by [Plaintiff] . . . during [Defendant's] hospitalization or treatment." The payment guaranty section further stated that if Defendant failed to pay "all charges and [Plaintiff] . . . use[d] an attorney to collect unpaid charges, I [Defendant] agree to pay the reasonable cost of the attorney's services in addition to the unpaid charges." However,

> [a] guaranty is a promise to answer for the payment of some debt, or the performance of some duty, in the case of the failure of another person who is liable in the first instance for such payment or performance. The guaranty creates an obligation that is independent of the obligation of the principal debtor. A guaranty is a collateral and independent undertaking creating a secondary liability. The creditor's cause of action against the guarantor ripens immediately upon the failure of the principal debtor to pay the debt at maturity.

*Forsyth Co.*, 82 N.C. App. at 267, 346 S.E.2d at 214 (citations omitted); *see also Amoco Oil Co. v. Griffin*, 78 N.C. App. 716, 718, 338 S.E.2d 601, 602 (1986) ("A guaranty of payment is an absolute promise to pay the debt of another if the debt is not paid by the principal debtor.") (citation omitted). In the present case, Defendant himself signed the

**CHARLOTTE-MECKLENBURG HOSP. AUTH. v. TALFORD**

[214 N.C. App. 196 (2011)]

"Request for Treatment and Authorization Form" that included a "Payment Guaranty" section. Therefore, no secondary obligation was ever created in a third party. Defendant is the principal debtor and the only debtor who could have assumed any liability pursuant to the "Payment Guaranty" section.

Plaintiff cites *Forsyth Co.* in support of its argument. However, as stated above in *Forsyth Co.*, the law requires a third party to guarantee payment in case of the default of the primary debtor. *Forsyth Co.*, 82 N.C. App. at 267, 346 S.E.2d at 214 (citations omitted). The factual situation in *Forsyth Co.*, unlike the factual situation in the present case, conforms to this requirement. Plaintiff has failed to make a valid guaranty claim. We note that Plaintiff's complaint included three "causes of action:" (1) "Implied Contract and Quantum Meruit," (2) "Guaranty of Payment," and (3) "Attorney's Fees." Plaintiff included no claim for breach of an express contract, and does not argue on appeal that its motion for summary judgment was properly granted based upon any breach of an express contract. This issue was not presented to the trial court for consideration. *See* N.C. Gen. Stat. § 1A-1, Rule 8 (2009); *Robinson v. Powell*, 348 N.C. 562, 566-67, 500 S.E.2d 714, 717 (1998) (citations omitted). In addition, as the dissent acknowledges, even if there was a valid claim for breach of an express contract presented to the trial court, because the "contract" did not specify the amount to be charged to Defendant, the outcome is still determined pursuant to a *quantum meruit* analysis.

Affirmed in part, reversed in part, and remanded.

Chief Judge MARTIN concurs.

Judge ERVIN dissents with a separate opinion.

ERVIN, Judge, dissenting.

Although I concur in the Court's determination that Defendant's failure to challenge the trial court's decision with respect to the issue of liability on appeal necessarily means that the only question before us is the appropriateness of the trial court's decision to enter judgment in favor of Plaintiff on the issue of damages, I am unable to join that portion of the Court's opinion that concludes that the trial court erred by granting summary judgment in favor of Plaintiff with respect to the damages issue. As a result, I join the Court in affirming the trial court's decision to grant summary judgment in favor of Plaintiff with

respect to the issue of liability, although I believe that Defendant's liability is predicated on an express contract rather than on a *quantum meruit* theory. However, I respectfully dissent from that portion of the Court's opinion that reverses the trial court's decision concerning the damages issue and would affirm the damages-related portion of the trial court's judgment as well.

## I. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). In reviewing an order granting summary judgment, our task is to "determine, on the basis of the materials presented to the trial court, whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." *Coastal Plains Utils., Inc. v. New Hanover Cty.*, 166 N.C. App. 333, 340, 601 S.E.2d 915, 920 (2004) (citing *Oliver v. Roberts*, 49 N.C. App. 311, 314, 271 S.E.2d 399, 401 (1980), *cert. denied*, 276 S.E.2d 283 (1981)). "All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Boudreau v. Baughman*, 322 N.C. 331, 343, 368 S.E.2d 849, 858 (1988) (citing *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E.2d 189, 194 (1972)).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

N.C. Gen. Stat. § 1A-1, Rule 56(e). " 'A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein.' " *Merritt, Flebotte, Wilson, Webb & Caruso, PLLC v.*

*Hemmings*, 196 N.C. App. 600, 605, 676 S.E.2d 79, 83-84 (quoting *Page*, 281 N.C. at 705, 190 S.E.2d at 194), *disc. review denied*, 363 N.C. 655, 686 S.E.2d 518 (2009). A trial court's decision to grant a summary judgment motion is reviewed on a *de novo* basis. *Va. Electric & Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986).

## II. Substantive Legal Issues

### A. Basis of Liability

As an examination of the record and briefs clearly establishes, the parties agree that Plaintiff provided medical services to Defendant and billed Defendant $14,419.57 for those services. In reaching the conclusion that Defendant had failed to challenge the trial court's liability decision on appeal and that the trial court's decision concerning the liability issue should be upheld on appeal for that reason, the Court, with the apparent support of Plaintiff, appears to assume that the trial court relied on a *quantum meruit* theory in order to reach that result. Although I agree with the Court that Defendant has not challenged the trial court's decision to find him liable to Plaintiff under any particular theory and that the trial court's finding of liability should be upheld for that reason, I do not agree with the Court's apparent understanding of the basis upon which the trial court decided the liability issue.

The Request for Treatment and Authorization Form that Plaintiff signed prior to receiving medical services from Plaintiff states, in pertinent part, that:

PAYMENT GUARANTY. I (patient and/or responsible party/ies) agree to pay all charges for services rendered by the Hospital and my physicians or other providers during my hospitalization or treatment. This guaranty includes charges for services not covered by my insurance, regardless of the reason that insurance coverage is denied. If I fail to pay all charges and the Hospital or my physicians use an attorney to collect unpaid charges, I agree to pay the reasonable cost of the attorney's fees in addition to the unpaid charges.

In its order granting summary judgment in favor of Plaintiff, the trial court explicitly stated that:

THIS MATTER coming on before the undersigned Superior Court Judge presiding upon motion of the Plaintiff pursuant to Rule 56 of the North Carolina Rules of Civil Procedure for an

Order granting Summary Judgment as to the Defendant . . . and it appearing to the Court that there is no genuine issue as to any material fact and that the Plaintiff is entitled to Judgment as a matter of law;

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment is granted and the Plaintiff is entitled to Judgment against the Defendant . . . as follows:

1. The principal amount of Fourteen Thousand Four Hundred Nineteen Dollars and 57/100 ($14,419.57);

2. Interest at the legal rate from 2/8/2008, until paid in full;

3. Attorney fees in the amount of Two Thousand One Hundred Sixty Two Dollars and 94/100 ($2,162.94);

4. The costs in this action be taxed against the Defendant.

Although I can find no case holding that attorney's fees are recoverable in an action brought solely on the basis of a *quantum meruit* theory, Plaintiff contends that such relief is available in cases brought pursuant to certain express contracts pursuant to N.C. Gen. Stat. § 6-21.2. As a result of the fact that the trial court awarded Plaintiff attorney's fees in addition to compensatory damages, I believe that, instead of finding Defendant liable on the basis of a *quantum meruit* theory, the trial court made its liability determination in reliance on the language of the Payment Guaranty provision.[1]

In rejecting Plaintiff's contention that the Payment Guaranty provision provides an alternative basis for holding Defendant liable for its bill, the Court concludes that the relevant contractual language does not create a valid guaranty because "Defendant himself signed the 'Request for Treatment and Authorization Form' that included a 'Payment Guaranty' section," so that "no secondary obligation was ever created in a third party." A careful reading of the Payment Guaranty provision demonstrates, however, that, notwithstanding the introductory heading that makes reference to a "Payment Guaranty," this provision actually constitutes a direct promise made by Defendant to pay for the services that Plaintiff provided to him rather than a guaranty that Defendant would pay another person's bill. *See*

---

1. The Court concludes that the trial court lacked the authority to enter judgment in favor of Plaintiff on the basis of an express contract theory because Plaintiff never sought such relief in its complaint. I am unable to agree with this conclusion given that Plaintiff clearly alleged that it was entitled to recover damages on the basis of the Payment Guaranty provision in its complaint.

*Forsyth Co. Hospital Authority, Inc., v. Sales*, 82 N.C. App. 265, 268, 346 S.E.2d 212, 214 (stating that "the title is not necessarily controlling" and that "[t]he substance of the transaction controls"), *disc. review denied*, 318 N.C. App. 415, 349 S.E.2d 594 (1986). The Court's decision to treat the Payment Guaranty as an invalid guaranty provision, *Cowan v. Roberts*, 134 N.C. 415, 418, 46 S.E.2d 979, 980 (1904) (stating that "[a] guaranty is a promise to answer for some debt, or the performance of some duty, in the case of the failure of another person who is himself liable in the first instance [for] such payment or performance") (citing *Carpenter v. Wall*, 20 N.C. 279, 280 (1838)), strikes me as inconsistent with the document's literal language, which directly obligates Defendant to pay for the services which he received from Plaintiff rather than obligating Defendant to pay for services provided to another. As a result, I do not believe that the fact that the Payment Guaranty does not purport to render one person liable for the debt of another has any bearing on the extent, if any, to which Defendant is liable to Plaintiff on the basis of its provisions and cannot agree with the Court's conclusion to the contrary. Thus, given that the Payment Guaranty expressly provides for an award of attorney's fees, that the trial court awarded attorney's fees to Plaintiff in its judgment, and that such attorney's fees are not recoverable in an action brought on the basis of a *quantum meruit* theory,[2] I believe that the proper way to read the trial court's judgment is to understand it as resting on a decision to enforce the Payment Guaranty rather than on the doctrine of *quantum meruit*.

### B. Measure of Damages

"It is a well[-]established principle that an express contract precludes an implied contract with reference to the same matter." *Concrete Co. v. Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962) (citations omitted). However, "[w]here there is an express agreement to pay, but the amount is not specified, the person performing the services is entitled to recover on the theory of quantum meruit." *Duffell v. Weeks*, 15 N.C. App. 569, 570-71, 190 S.E.2d 379, 381

---

2. Plaintiff contends in its brief that it is entitled to recover attorney's fees pursuant to N.C. Gen. Stat. § 6-21.2, which authorizes a successful litigant to collect attorney's fees in connection with the enforcement of "any note, conditional sale contract or other evidence of indebtedness." We need not decide whether Plaintiff is actually entitled to recover attorney's fees under the Payment Guaranty pursuant to N.C. Gen. Stat. § 6-21.2 in light of Defendant's complete failure to challenge this aspect of the trial court's judgment on appeal. *Viar v. N.C. Dept. of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (stating that "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant").

(1972); *see also Turner v. Marsh Furniture Co.*, 217 N.C. 695, 697, 9 S.E.2d 379, 380 (1940) (stating that, "when there is no agreement as to the amount of compensation to be paid for services, the person performing them is entitled to recover what they are reasonably worth. . . ."). Although this Court has found that a contract for medical services between a hospital and a patient requiring the patient to pay " 'the regular rates and terms of the Hospital at the time of patient's discharge' " constitutes a sufficiently definite price term to support an award of damages in reliance on an express contract, *Shelton v. Duke Univ. Health Sys.*, 179 N.C. 120, 123-24, 633 S.E.2d 113, 115-16 (2006), *disc. review denied*, 361 N.C. 357, 643 S.E.2d 591 (2007), I am unable to conclude that a provision requiring Defendant to pay "all charges" is entitled to similar treatment. Thus, the ultimate issue before us on appeal is the correctness of the trial court's decision that there was no genuine issue of material fact with respect to the reasonable value of the services that Plaintiff provided Defendant and that Plaintiff was entitled to judgment as a matter of law on that question.[3]

"In order to recover in *quantum meruit*, a party must prove, in addition to the contract, the reasonable value of his services rendered thereunder." *Paxton v. O.P.F., Inc.*, 64 N.C. App. 130, 133, 306 S.E.2d 527, 530 (1983) (citing *Hood v. Faulkner*, 47 N.C. App. 611, 616, 267 S.E. 2d 704, 706-07 (1980), and *Harrell v. Construction Co.*, 41 N.C. App. 593, 595-96, 255 S.E.2d 280, 282 (1979), *aff'd*, 300 N.C. 353, 266 S.E.2d 626 (1980)).

> The general rule is that when there is no agreement as to the amount of compensation to be paid for services, the person performing them is entitled to recover what they are reasonably worth, based on the time and labor expended, skill, knowledge and experience involved, and other attendant circumstances, rather than on the use to be made of the result or the benefit to the person for whom the services are rendered.

*Turner*, 217 N.C. at 697, 9 S.E.2d at 380 (citations omitted). In challenging the trial court's decision to grant summary judgment in favor of Plaintiff on the issue of damages, Defendant attacks the sufficiency of the evidence that Plaintiff presented in an effort to establish the reasonableness of its charges for medical services.

---

3. The distinction made in the text between an action brought under a *quantum meruit* theory and the use of *quantum meruit* principles to replace an indefinite price term in an express contract makes no practical difference for purposes of this case. In both instances, the measure of damages is the same: the reasonable value of the services provided to plaintiff by defendant.

In *Harrell*, 41 N.C. App. at 596, 255 S.E.2d at 282, this Court held that, where the "Plaintiff did not offer evidence as to the reasonable value or market value of its services, but merely stated what it was charging for these services as shown on plaintiff's [ledger sheets,]" the invoice, unaccompanied by any other evidence, did not suffice to establish that the plaintiff's bill was reasonable. *See also Paxton*, 64 N.C. App. at 134, 306 S.E.2d at 530 (holding that "a plaintiff must do more than simply allege an amount and its reasonableness" in order "to recover more than nominal damages"); *Hood*, 47 N.C. App. at 617, 267 S.E.2d at 707 (holding that the plaintiff's bill coupled with "the plaintiff's opinion that the amount of his bill is reasonable [is not] sufficient to sustain an award for such sum"). On the other hand, in *Environmental Landscape Design v. Shields*, 75 N.C. App. 304, 330 S.E.2d 627 (1985), a case in which the plaintiff sought payment for landscaping work, we noted that, "[b]esides plaintiff's bill, there was evidence in the present case that the landscaper who eventually landscaped defendants' property also charged $30.00 per hour" and held that "this evidence was sufficient to go to the jury on the issue of damages."[4] *Id.* at 307, 330 S.E.2d 629; *see also Booe v. Shadrick*, 322 N.C. 567, 571, 369 S.E.2d 554, 556 (1988) (holding that the testimony of the plaintiff's bookkeeper "as to what was billed for the materials and labor and the evidence of a payment for a part of it at the billed rate is evidence sufficient for the jury to find the reasonable value to the defendants of the remaining goods and services for which bills were submitted and no payment was made").[5] As a result, a critical

---

4. Although the Court attempts to distinguish this case from *Environmental Landscaping* on the grounds that the present case lacks "independent corroboration" evidence of prices charged by third parties for similar services, I do not find this argument persuasive. At bottom, the fact that rendered the plaintiff's evidence in *Environmental Landscaping* sufficient was the existence of evidence of what a service provider other than the plaintiff charged for similar services. Such evidence exists in this case in the form of testimony from Plaintiff's affiants concerning the consistency of the prices charged by Plaintiff with the prices charged by other, similar facilities and the guidelines and billing regulations promulgated by various programs such as Medicare. I do not believe, for reasons that are stated in more detail below, that the fact that the evidence in question was presented in the form of affidavits executed by Plaintiff's employees rather than in the form of evidence presented by a third party makes any material difference in the outcome given the absence of patent, as compared to latent, reasons for questioning the credibility of those affiants.

5. Although the Court emphasizes the obvious factual differences between the present case and *Booe*, it also cites *Booe* for the proposition that a defendant is entitled to defend against efforts to collect a combined bill for materials and services by presenting evidence that the materials in question were overpriced. I do not, however, find this argument convincing given that the evidence before the Court in *Booe* uniformly included combined prices for both labor and materials rather than for materials alone.

distinction between the decisions in which the evidence has been held sufficient or insufficient to establish the reasonable value of goods and services provided to a defendant is the extent to which the record does or does not contain evidence tending to show that the amount the plaintiff charged was similar to that charged by at least one other market participant or had been previously paid by the defendant without objection.[6]

In overturning the trial court's decision to grant summary judgment in favor of Plaintiff on the damages issue, the Court holds that "Plaintiff's evidence concerning damages consisted entirely of a 'bill' stating that Plaintiff was owed $14,419.57, along with affidavits from its own employees stating that that amount was reasonable;" that "Defendant challenged the reasonableness of that amount;" and, that, "in his affidavit, [Defendant] provided specific challenges to [the] amounts Defendant claims he was charged by Plaintiff for services." I do not read the Plaintiff's showing before the trial court at the summary judgment hearing as consisting solely of a bill coupled with a conclusory claim of reasonableness.

In its complaint, Plaintiff alleged that "[t]he fair and reasonable value of the goods and services referred to in paragraph 4 above, for which payment has not been received, is not less than Fourteen Thousand Four Hundred Nineteen Dollars and 57/100 ($14,419.57)" and that "[t]he charges listed for the services rendered as requested by the treating physician as medically necessary are reasonable given

---

6. The Court questions the appropriateness of my reliance on certain of these cases because they were decided in a directed verdict, rather than in a summary judgment, context. However, this Court has clearly stated that "[t]he standard of review for a directed verdict is essentially the same as that for summary judgment." *Nelson v. Novant Health Triad Region*, 159 N.C. App. 440, 442, 583 S.E.2d 415, 417 (2003). Although the Court notes that there are obvious differences between the inquiries that must be conducted in the two contexts and contends that the distinction between the summary judgment and directed verdict contexts is critical to a proper resolution of this case, I believe that these assertions do not undermine the usefulness of the decisions that I have discussed in the text for purposes of resolving the present case. According to well-established North Carolina law, in the event that a party with the burden of proof seeking the entry of summary judgment in its favor "properly supports all the essentials of that claim with evidence, it falls to the opposing party to present contradictory evidence or to show by facts that the movant's evidence is insufficient or unreliable." *Blackwell v. Massey*, 69 N.C. App. 240, 243, 315 S.E.2d 350, 352 (1984). As a result, the extent to which Plaintiff's proof would be sufficient to avert the entry of a directed verdict in favor of Defendant is clearly relevant to the issue of whether its evidentiary forecast sufficed to require Defendant to show the existence of a genuine issue of material fact or risk having summary judgment entered in favor of Plaintiff.

that they are standard charges rendered to all patients receiving similar types of services, they are within industry norms for similar facilities providing similar services at similar levels of care, and they are compliant with various published billing and charging regulations and guidelines, including those of the Center for Medicare and Medicaid Services." Attached to Plaintiff's complaint was an "Affidavit and Verification," which stated that:

> Before the undersigned Notary Public, personally appeared James D. Robinson, who being duly sworn, says: That he is the Manager of Patient Financial Services, Legal Accounts for The Charlotte-Mecklenburg Hospital Authority, Plaintiff in this action and that as such, he makes this affidavit:

> He is personally familiar with the books, records and record-keeping system of Plaintiff and the entries were made in accordance with said systems; that the entries are part of the regular business records of the Plaintiff and represent the fair and reasonable value of the goods and services rendered; that the entries were made at or near the time of the transactions recorded; and that the account of [Defendant] is just and true as stated hereafter[.]

> Further, he verifies that he has read the foregoing Complaint and knows the contents thereof, and that said contents are true of his own knowledge, save and except for those matters and things stated therein upon information and belief, and as to such matters and things, he believes them to be true.

In addition, Plaintiff submitted several affidavits to the trial court in support of its request for summary judgment, including the affidavit of Sunny Sain, Plaintiff's Director of Revenue Management, in which Ms. Sain stated that:

> The undersigned, Sunny Sain, Director, Revenue Management being first duly sworn, deposes and states that the charges listed for the services rendered as requested by the treating physician are reasonable given that they are standard charges rendered to all patients receiving similar types of services, they are within industry norms for similar facilities providing similar services at similar levels of care, and they are compliant with various published billing and charging regulations and guidelines, including those of the Center for Medicare and Medicaid Services.

Although Defendant argues that Ms. Sain's affidavit "did not present any facts based upon personal knowledge that the fees charged were reasonable", we need not decide whether Ms. Sain's affidavit, taken in context, adequately establishes that the information contained in that document rested on her personal knowledge in light of her role as Plaintiff's Director of Revenue Management, *See Bird v. Bird,* 193 N.C. App. 123, 130, 668 S.E.2d 39, 43 (2008), *aff'd,* 363 N.C. 774, 688 S.E.2d 420 (2010) (holding that a private investigator's affidavit, when read in context, established that it was based on the requisite personal knowledge), *Hospital v. Brown,* 50 N.C. App. 526, 530, 274 S.E.2d 277, 280 (1981) (holding that an individual who "testified that he served as credit manager for plaintiff hospital for four years, was familiar with plaintiff's schedule of charges, was familiar with schedules of charges for hospital services approved by Blue Cross-Blue Shield and the Federal government, and was familiar with the procedures used by plaintiff in determining the amount owed by patients" "was competent to give his opinion as to the reasonableness of the charges made by plaintiff for the treatment and care of" the patient),[7] given that Mr. Robinson, in verifying the complaint, swore to essentially the same information as Ms. Sain and given that Defendant has not challenged the sufficiency of the evidence presented by Mr. Robinson. As a result, I believe that the record contains much more than a simple recitation of the amount of Plaintiff's bill and a conclusory claim that the amount of Plaintiff's bill was reasonable. Instead, I read the record as showing that Plaintiff has presented evidence to the effect that the amounts charged to Defendant were

1. Standard charges rendered to all patients receiving similar types of services.

2. Within industry norms for similar facilities providing similar services at similar levels of care.

---

7. The Court notes that "we have only affidavits from Plaintiff's employees stating that the amounts charged to Defendant were the same as would be charged by other hospitals" and that "Plaintiff's own statements concerning the reasonableness of the charges [do not] carry the same weight as specific evidence that an independent third party did, in fact, charge the same rate." Although I cannot quarrel with the accuracy of the Court's statement that Plaintiff relied on information supplied by its own employees, I do not, for reasons to be discussed in more detail below, believe that the fact that Plaintiff employed these affiants provides any basis for overturning the trial court's decision to grant summary judgment with respect to the issue of damages in favor of Plaintiff and am concerned that the Court's reliance on this fact involves a credibility determination that is outside the scope of the issues that should be considered in ruling on a trial court order granting or denying a summary judgment motion.

3. Compliant with various published billing and charging regulations and guidelines, including those of the Center for Medicare and Medicaid Services.

Thus, unlike the Court,[8] I would hold that Plaintiff forecast sufficient evidence tending to show both the amount of the bill that it submitted to Defendant and that the amount of that bill was reasonable in light of prevailing market conditions,[9] thereby obligating Defendant to produce evidence of "specific facts showing that there is a genuine issue for trial."[10]

In attempting to respond to Plaintiff's evidence, Defendant submitted an affidavit upon which the Court relies, in part, to find that the record discloses the existence of a genuine issue of material fact sufficient to preclude an award of summary judgment with respect to the damages issue.[11] In his affidavit, Defendant stated:

---

8. The difference of opinion that exists between the Court, on the one hand, and me, on the other, with respect to this issue is critical to a proper appreciation of our differing positions about the proper resolution of this case. Although both of us appear to understand the applicable standard as objective, rather than subjective, in nature, I believe that the additional references in Plaintiff's affidavits to the charges assessed against other patients, the consistency of Plaintiff's charges with those assessed for similar services in similar facilities, and the fact that Plaintiff's charges are consistent with "various published billing and charging regulations and guidelines" are sufficient to convert Plaintiff's evidence from a subjective claim of reasonableness to an objective description of applicable market conditions, thereby rendering this case distinguishable from decisions such as *Austin v. Enterprises, Inc.*, 45 N.C. App. 709, 710-11, 264 S.E.2d 121, 122 (1980); *Hood*; and *Paxton.*

9. Although the Court notes that the record does not contain an itemized bill detailing the services that Plaintiff provided to Defendant, it does not cite any authority for the proposition that the inclusion of such a bill in the record is a precondition for a finding of reasonableness, and I have not discovered any such authority in my own research. Thus, particularly given that the record clearly establishes that Defendant had access to such an itemized bill for use in preparing his defense, I do not believe that Plaintiff's failure to submit such a bill for the trial court's consideration at the time of the hearing on its summary judgment motion has any bearing on the proper resolution of this case.

10. I do not, of course, believe that the fact that Plaintiff made a *prima facie* showing on the damages issue entitles it to summary judgment in its favor. Instead, I simply believe that Plaintiff's success in making out such a case required Defendant to establish the existence of a genuine issue of material fact in order to preclude the entry of summary judgment in Plaintiff's favor.

11. The Court concludes, as I have previously indicated, that the fact that Plaintiff's affidavits were executed by its own employees results in the existence of a genuine issue of material fact sufficient to preclude the entry of summary judgment in Plaintiff's favor with respect to the damage issue for credibility-related reasons. I am not persuaded by this argument for two different reasons. First, since Defendant never

1. That I am the Defendant in the above-captioned matter;

2. That my hospital bill has a cost of $18.40 for one tablet of Diltiazem, and my prescription from CMC Pharmacy cost $23.00 for thirty (30) tablets;

3. That my hospital bill has a cost of $406.50 for one unit of Enoxaparin sodium, 120 mg syringe, and the cost for this item is $278.00 for ten units;

4. That my hospital bill has a cost of $1.45 per unit for a folic acid 1 mg tablet, and the cost at a local pharmacy is $4.00 for thirty 1 mg tablets;

5. That plaintiff's charges exceed the charges made and paid by other patients in the defendant's medical condition;

6. That the plaintiff's charges are not reasonable for the medical care necessary to control the defendant's medical condition.

The record provides absolutely no basis for inferring that the last two assertions contained in Defendant's affidavit were based on his personal knowledge, so the statements in question were not properly before the trial court at the time that it ruled on Plaintiff's summary judgment motion. *Nugent v. Beckham*, 37 N.C. App. 557, 560, 246 S.E.2d 541, 544 (1978) (noting that "[a]t no point does the affidavit in question affirmatively show that it was based on the personal knowledge of the affiant or that he was otherwise competent to testify to

made any such credibility-related argument in his brief, a decision to grant relief on this basis would be tantamount to "creat[ing]" an appeal for an appellant." *Viar*, 359 N.C. at 402, 610 S.E.2d at 361. Secondly, the Supreme Court has clearly stated that "summary judgment may be granted for a party with the burden of proof on the basis of his own affidavits (1) when there are only latent doubts as to the affiant's credibility; (2) when the opposing party has failed to introduce any materials supporting his opposition, failed to point to specific areas of impeachment or contradiction, and failed to utilize [N.C. Gen. Stat. § 1A-1,] Rule 56(f); and (3) when summary judgment is otherwise appropriate." *Kidd v. Early*, 289 N.C. 343, 370, 222 S.E.2d 392, 412 (1976). As a result of the fact that the only doubts that the Court has expressed about the credibility of Plaintiff's affiants arise from the identity of their employer, making these doubts latent, rather than patent, in nature; given the fact that the record is devoid of any reason to believe that the affiants have a personal stake in the outcome of this case; and given that the fact that I do not believe that the other bases for refusing to grant summary judgment in favor of the party with the burden of proof outlined in *Kidd* are present in this case, I do not believe that the trial court's order is subject to reversal on credibility-related grounds even if the Court were to reach this issue and disagree with the Court's apparent impression that granting summary judgment in favor of the party with the burden of proof in a case where the defendant has failed to forecast relevant evidence demonstrating the existence of a genuine issue of material fact is tantamount to making a determination that Plaintiff's affiants are credible.

the matters stated therein").[12] An examination of the information about which Defendant appears to have personal knowledge set out in Defendant's affidavit indicates that, in each instance, Defendant selected a medication that Plaintiff utilized in the course of providing medical services to him and compared the cost of purchasing that medication at retail to the amount that Plaintiff charged to Defendant relating to the same item.

On appeal, Defendant asserts, and the Court appears to agree, that these three cost differences demonstrate the existence of a genuine issue of material fact concerning the reasonable value of the services Defendant received from Plaintiff. I am unable to agree with this contention, since it rests upon a misapprehension of the relevant legal standard, which focuses upon the value of the services provided by Plaintiff rather than upon the cost of particular components of the services provided to Defendant if purchased under vastly different sets of circumstances. *See, e.g., Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 198-99 (2001) (stating that " 'reasonable value' " in cases involving "medical goods and services provided by a hospital to a patient" should be "determined by considering the hospital's internal factors as well as the similar charges of other hospitals in the community") (citing *Galloway v. Methodist Hospital, Inc.*, 658 N.E.2d 611, 614 (Ind. Ct. App. 1995), *Heartland Health System, Inc. v. Chamberlin*, 871 S.W.2d 8, 11 (Mo. Ct. App. 1993), *Victory Memorial Hospital v. Rice*, 143 Ill App. 3d 621, 625, 493 N.E.2d 117, 120, 97 Ill. Dec. 635, ___ (1986), and *Ellis Hospital v. Little*, 65 App. Div. 2d 644, 409 N.Y.S.2d 459, 461 (1978).

As the record clearly reflects, Plaintiff is not a retail establishment primarily engaged in the sale of medications, devices, or other supplies. Instead, Plaintiff is a provider of comprehensive medical services in a hospital environment. Simply put, Plaintiff did not merely sell Defendant specific medications; instead, Plaintiff provided these medications to Defendant as part of an overall package that also included nursing services, the use of hospital facilities, and similar items provided on a bundled rather than an unbundled basis. The fact that one could purchase certain medications in a retail estab-

---

12. Although the Court appears to assert, in reliance on *Austin*, that these generalized denials of reasonableness suffice to demonstrate the existence of a genuine issue of material fact, this argument overlooks the fact that the evidentiary forecast submitted on behalf of the plaintiff in *Austin* consisted of nothing more than a generalized assertion of reasonableness, 45 N.C. App. at 710-11, 264 S.E.2d 122, and the fact that, in order to avoid a grant of summary judgment, the defendant "must set forth specific facts showing there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e).

lishment more cheaply than the amount associated with the provision of that medication as administered in the course of rendering inpatient treatment in a hospital, as reflected on Plaintiff's bill, has no bearing on the issue of whether Plaintiff charged a reasonable amount for the medical care that it provided to Defendant given the applicable legal standard. As a result, since the information contained in Defendant's affidavit is simply not relevant to the issue of the reasonableness of the cost of the medical <u>services</u> that Defendant received from Plaintiff, I would hold that the information in question did not suffice to show the existence of a genuine issue of material fact concerning the reasonableness of Plaintiff's bill and would affirm the trial court's decision to grant summary judgment in favor of Plaintiff with respect to the damages issue as well.

### III. Conclusion

Thus, for the reasons set forth above, I believe that Plaintiff forecast sufficient evidence concerning the reasonableness of the amount that it billed Defendant to require Defendant to show the existence of a genuine issue of material fact. In addition, I believe that the only factual information offered by Defendant in opposition to Plaintiff's showing was simply irrelevant to the issue that is actually before the Court in light of the applicable measure of damages. As a result, although I concur in the Court's decision to affirm the trial court's determination that Defendant is liable to Plaintiff, I differ from the Court in believing that the trial court's order should be affirmed in its entirety and respectfully dissent from the Court's decision to overturn the trial court's entry of summary judgment in favor of Defendant on the damages issue.[13]

---

13. The Court argues that the effect of the analytical approach that I have used in this case is that, in every case in which a trial judge grants a directed verdict, summary judgment should have been granted, and that, in the event that a trial court denies summary judgment in favor of one party, it should necessarily grant summary judgment in favor of the other party. I do not believe that such an outcome is inherent in the approach I have taken, which I believe to be the one required by applicable North Carolina law. The first of these two propositions is not necessarily valid because issues of credibility may appear to exist at the time a summary judgment motion is decided but do not ultimately materialize at trial. Similarly, in the event that a trial judge denies a summary judgment motion filed by one party on the grounds that the record discloses the existence of one or more genuine issues of material fact, it would be equally inappropriate for summary judgment to be granted in favor of the other party. At bottom, as long as a party against whom summary judgment is sought presents or points to specific evidence in the record or specific patent difficulties with the credibility of the movant's evidence, it is not defenseless against an exorbitant claim for monetary damages.