An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-753

Filed 18 March 2026

Davie County, No. 19CVS000220-290

WILLIAM FULP WRECKER SERVICE, INC., Plaintiff,

      v.

FINISHLINE TRUCKING, L.L.C., Defendant.


Appeal by plaintiff from judgment entered 8 February 2024 by Judge Joseph N. Crosswhite in Davie County Superior Court. Heard in the Court of Appeals 20 March 2025.

> *Batten McLamb Smith PLLC, by Jaye E. Bingham-Hinch, and Finger Roemer Brown & Mariani, L.L.P., by Andrew G. Brown, for plaintiff-appellant.*
>
> *Pinto, Coates, Kyre & Bowers, PLLC, by Britney M. Millisor, Richard L. Pinto, and Lyn K. Broom, for defendant-appellee.*


GORE, Judge.

This case arises from a dispute over diesel oil cleanup costs following the overturn of defendant's tractor-trailer in Davie County, North Carolina. Plaintiff performed the cleanup at the request of the Fire Marshal and later invoiced defendant for $289,707.00, alleging unjust enrichment. Defendant denies liability,

WILLIAM FULP WRECKER SERV., INC. V. FINISHLINE TRUCKING, L.L.C.

*Opinion of the Court*

asserting it never requested or agreed to the services and that statutory law, not equitable principles, governs cleanup costs. The trial court granted summary judgment for defendant, finding no genuine issue of material fact. Plaintiff appeals, arguing that sufficient evidence supports its claim. Jurisdiction is proper under N.C.G.S. § 7A-27(b)(1) as a final judgment of the trial court. Upon review, we affirm.

## I.

On 22 August 2017, a tractor-trailer owned by defendant Finishline Trucking, L.L.C., overturned in Davie County, North Carolina, resulting in a fire and the release of diesel fuel and other automotive fluids. Emergency responders, including the Davie County Fire Marshal's Office and Emergency Management Services ("EMS"), arrived at the scene. Fire Marshal Jerry Myers determined a cleanup was necessary and contacted plaintiff William Fulp Wrecker Service, Inc. to assist in containing and remediating the spill. Plaintiff's work spanned nine days, involving personnel, equipment, and oversight from the North Carolina Department of Environmental Quality ("NCDEQ") and a geologist who conducted soil and water testing.

Plaintiff contends defendant was aware of and accepted the benefit of the cleanup, citing communications between Kent Fulp, plaintiff's vice president, and an individual he believed to be Edward Garcia, Finishline's owner. Plaintiff further states defendant's representative provided insurance details, indicating an expectation that coverage would apply. Plaintiff sent defendant an invoice for

WILLIAM FULP WRECKER SERV., INC. V. FINISHLINE TRUCKING, L.L.C.

*Opinion of the Court*

$289,707.00 on 14 September 2017 but received no payment.

Defendant, however, denies authorizing, agreeing to pay for, or assuming responsibility for plaintiff's services. Defendant argues the cleanup was arranged solely by Fire Marshal Myers, and it was not involved in the decision-making process regarding the scope or cost of the remediation. The trial court granted summary judgment in favor of defendant, concluding that no genuine issue of material fact existed regarding defendant's liability. Plaintiff appeals that ruling.

**II.**

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law.'" *In re Will of Jones,* 362 N.C. 569, 573 (2008) (citation omitted). "A 'genuine issue' is one that can be maintained by substantial evidence. The showing required for summary judgment may be accomplished by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Dobson v. Harris,* 352 N.C. 77, 83 (2000) (internal citations omitted).

Unjust enrichment is "a claim in quasi contract or a contract implied in law." *Booe v. Shadrick*, 322 N.C. 567, 570 (1988). A prima facie claim for unjust enrichment requires proof of five elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the benefit was not conferred officiously, meaning it was not imposed

WILLIAM FULP WRECKER SERV., INC. v. FINISHLINE TRUCKING, L.L.C.

*Opinion of the Court*

through unjustified interference; (3) the benefit was not gratuitous; (4) the benefit is measurable; and (5) the defendant consciously accepted the benefit. *JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 230 N.C. App. 537, 541–42 (2013). To establish liability, a plaintiff must show that property or benefits were conferred on the defendant under circumstances that create a legal or equitable obligation to compensate for those benefits, but that the defendant has failed to make restitution. *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417 (2000).

In this case, the State, not defendant, directly benefited from the cleanup. North Carolina law authorizes agencies like NCDEQ and local emergency management to oversee and direct hazardous material spill remediation to protect public health and the environment. *See* § 143-215.84(b). Here, these agencies took control of the cleanup process, coordinating and directing the response.

The forecast of evidence does not indicate defendant requested, approved, or exercised any control over the remediation, nor did it determine its scope or cost. The benefit conferred was to the State and the public. Under the statutory framework, cost recovery is pursued through State enforcement mechanisms, further indicating the State—not defendant—was the intended beneficiary of the remediation efforts.

Because unjust enrichment requires a party to have "consciously accepted the benefit[,]" *Booe*, 322 N.C. at 570, defendant cannot be held directly liable to plaintiff for cleanup costs merely due to its involvement in the underlying spill. Without evidence that defendant requested, controlled, or otherwise knowingly accepted the

WILLIAM FULP WRECKER SERV., INC. V. FINISHLINE TRUCKING, L.L.C.

*Opinion of the Court*

benefit, the unjust enrichment claim against defendant fails as a matter of law.

Plaintiff argues the North Carolina Fire Code, specifically §§ 2701 and 2703, imposes financial responsibility on defendant by requiring parties who store, handle, or transport hazardous materials to cover cleanup costs. However, § 101.2 states the Fire Code regulates "structures, processes, premises, and safeguards," but does not govern the discharge of diesel oil onto land or into waters. Because the Fire Code does not establish liability or cost recovery procedures for such discharges, it does not apply to this claim.

In contrast, defendant argues the Oil Pollution and Hazardous Substances Control Act of 1978, codified in N.C.G.S. § 143-215.75 et seq., governs liability and cost recovery for hazardous material spills in North Carolina. This statutory framework establishes a comprehensive regulatory scheme for state agencies to recover cleanup costs. Because the Act provides a specific enforcement mechanism, defendant contends it preempts plaintiff's unjust enrichment claim, making the State—not a private entity—the proper party to seek reimbursement. We agree.

Under N.C.G.S. § 143-215.84(a), any person responsible for an unlawful discharge of oil or hazardous substances must immediately clean up the spill and restore the affected area. This provision establishes a clear duty for responsible parties to mitigate environmental damage. However, § 143-215.84(b) grants the Department of Environmental Quality authority to intervene when necessary, allowing it to deploy state resources, collaborate with local agencies, or hire

WILLIAM FULP WRECKER SERV., INC. v. FINISHLINE TRUCKING, L.L.C.

*Opinion of the Court*

contractors to investigate and remediate contamination.

Additionally, N.C.G.S. § 143-215.88 provides a structured reimbursement process for state-incurred cleanup costs. Once remediation is complete, participating state or local agencies submit expenses to the Department, which then disburses funds from the Oil or Other Hazardous Substances Pollution Protection Fund. The Secretary must seek reimbursement from the responsible party, and if payment is not made, the Attorney General is authorized to initiate legal action to recover costs on behalf of the State. § 143-215.88. This process makes clear that liability for cleanup costs lies with the responsible party, but only the State—not private entities—can enforce payment through statutory means.

In this case, Fire Marshal and Emergency Management Director Jerry Myers authorized plaintiff to conduct diesel oil containment, mitigation, cleanup, and remediation. NCDEQ conducted an on-site assessment with Davie County Emergency Management, a geologist from GeoScience & Technology, and plaintiff's site managers to discuss cleanup procedures and establish daily stream monitoring. Defendant was not involved in this process. The agreement for remediation was between Fire Marshal Myers and plaintiff, yet plaintiff now attempts to bind defendant—a third party—to that agreement despite no evidence that defendant requested or authorized that work.

Plaintiff argues Davie County Ordinance § 51.63 imposes strict liability on defendant for cleanup costs, asserting it applies to transporters of hazardous

WILLIAM FULP WRECKER SERV., INC. v. FINISHLINE TRUCKING, L.L.C.

*Opinion of the Court*

materials in Davie County and requires reimbursement for emergency response and remediation. Plaintiff relies on § 51.63(d) to claim that defendant, as the transporter of the spilled materials, is financially responsible for the cleanup and contends that this ordinance, along with state environmental laws, supports an unjust enrichment claim by establishing a legal obligation for defendant to cover the costs incurred.

However, N.C.G.S. § 153A-136(a) only authorizes counties to regulate "nonhazardous solid waste," explicitly excluding hazardous waste under § 153A-136(d). Because § 51.63 attempts to impose liability for hazardous material spills from transportation accidents, it exceeds the county's regulatory authority. Since diesel fuel and automotive fluids do not qualify as nonhazardous solid waste, the ordinance does not apply, making plaintiff's reliance on it misplaced.

## III.

Plaintiff performed the remediation at the direction of government agencies, and the evidence does not indicate defendant requested, authorized, or knowingly accepted the benefit. Since unjust enrichment requires conscious acceptance of a benefit, *Booe*, 322 N.C. at 570, plaintiff has failed to establish an essential element of its claim. Accordingly, we affirm the trial court's order granting summary judgment in favor of defendant.

AFFIRMED.

Judges HAMPSON and MURRY concur.

Report per Rule 30(e).